**FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

In re:                                                          Chapter 7

ARBCO CAPITAL MANAGEMENT, LLP                                   Case No. 07-13283 (SCC)

                                    Debtor.

-------------------------------------------------------------x

Richard O'Connell, as chapter 7 Trustee of the
estate of Arbco Capital Management, LLP,

                                    Plaintiff,

              against                                           Adv. Pro. No. 09-01519 (SCC)


Penson Financial Services, Inc.,

                                    Defendant.

-------------------------------------------------------------x

### MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART THE MOTION TO DISMISS OF PENSON FINANCIAL SERVICES, INC.


A P P E A R A N C E S :

GOLDBERG WEPRIN FINKEL GOLDSTEIN LLP
1501 Broadway, 22nd Floor
New York, NY 10036
 By:    Kevin J. Nash, Esq.

*Attorneys for Richard O'Connell, Trustee*

MAYER BROWN LLP
1675 Broadway
New York, NY 10019
 By:    Mark G. Hanchet, Esq.
        James Ancone, Esq.

*Attorneys for Penson Financial Services, Inc.*

FOR PUBLICATION

Before:        Hon. Shelley C. Chapman
               United States Bankruptcy Judge

**SHELLEY C. CHAPMAN**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court is the motion ("Motion to Dismiss") of defendant Penson Financial Services, Inc. ("Penson") seeking to dismiss the second amended complaint (the "Complaint") of plaintiff Richard O'Connell, as chapter 7 trustee (the "Trustee") of the estate of Arbco Capital Management, LLP ("Debtor" or "Arbco").

At the center of the Complaint's allegations is the Ponzi scheme conducted by Hayim Regensberg ("Regensberg"), the president of Arbco, as further described below. By the Complaint, the Trustee alleges that Penson, Arbco's clearing agent, took actions well beyond the conventional clearing of securities trades to assist Regensberg in perpetuating a Ponzi scheme. Those actions involved, at various points: (i) activities generally associated with an introductory broker, replete with fiduciary responsibility; (ii) profit sharing in Arbco's trading activity; and (iii) mutual development and/or sharing of computer technology and software relating to high frequency stock trading. Complaint, ¶ 2. The Trustee alleges that Penson was the primary recipient of the fruits of the Ponzi scheme – over $10 million of alleged diverted investor funds were transferred from Arbco to Penson from 2005 to 2007 in a series of 37 cash transfers. Complaint, ¶ 27 and Ex. A. By the Complaint, the Trustee seeks to avoid and recover a total of $10,927,500 in prepetition transfers made by Debtor to Penson (identified on Exhibit A to the Complaint, the "Penson Payments"), pursuant to sections 547, 548, and 550 of the Bankruptcy Code. Complaint, ¶¶ 72-101 (Counts 1-3).

**FOR PUBLICATION**

In addition, the Complaint asserts common law claims for aiding and abetting, breach of fiduciary duty, breach of contract, and negligence.  Complaint, ¶¶ 102-130 (Counts 4-7, the "Common Law Claims").  These Common Law Claims are premised on the Trustee's allegation that Penson, as Arbco's clearing broker, knew, should have known, or consciously avoided discovering that Regensberg, through Arbco, was illegally misappropriating customer funds to engage in high risk trading in violation of securities laws and Penson's own internal regulations. The Trustee alleges that by this failure, Penson substantially assisted or knowingly participated in the scheme, breached fiduciary duties it owed to Arbco, and aided and abetted Regensberg in committing securities fraud and looting Arbco.  The Trustee seeks damages in the amount of not less than $10,927,500.

By the Motion to Dismiss, Penson asserts that the Complaint fails to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), made applicable herein by Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 7012, and should be dismissed.

For the reasons set forth below, the Motion to Dismiss is granted in part and denied in part, to the extent set forth herein.

## BACKGROUND

### I.    THE PONZI SCHEME.

Beginning in or about 2004, and continuing through at least September 2007, Regensberg, the manager and president of Arbco, utilized Arbco to perpetuate an illegal scheme to defraud members of the investing public and divert investor funds through a "Ponzi" scheme. To effect this illegal scheme, false representations were made to investors and potential investors

to induce them to entrust their monies to Arbco for the purported purpose of investing in one or two separate investment vehicles on a pooled basis. Complaint, ¶ 11.

First, Regensberg claimed that, through Arbco, he would use the pool of investor funds to make loans to other institutions engaged in securities trading (the "Trading Firms"). The loans would, in turn, be utilized by the Trading Firms as collateral for their own margin requirements at little or no risk to the invested capital (the "Lending Product"). Complaint, ¶ 12.

Second, Regensberg claimed that, though Arbco, he would use pooled investor funds to purchase initial public offerings ("IPOs") of stock traded on an international stock exchange, in a manner that would generate a quick and high rate of return (the "IPO Product"). Complaint, ¶ 13.

Arbco promised investors a high fixed annual rate of return, up to as high as eighteen (18%) percent per year. These investments were usually documented with a promissory note ("Note"), stating the fixed return to be paid to the investor and promising to pay such return in monthly installments. A Note typically promised that the investor would receive back the principal amount of the Note on the earlier of (a) the five-year anniversary of the Note's issuance, or (b) upon demand, as provided in the Note, approximately three weeks after such demand was made by the investor. Complaint, ¶ 14.

In connection with the IPO Product, it was falsely represented to investors that Arbco was able to purchase IPO stock of companies listed on the British stock exchange. Regensberg further represented that Arbco would sell that IPO stock in the public market at the earliest possible moment thereafter, thereby allowing him to achieve for Arbco's investors quick returns

**FOR PUBLICATION**

of between approximately five (5%) percent and approximately fifteen (15%) percent, with little or no risk to the invested capital.  Complaint, ¶ 15.

Arbco did not actually invest funds in any Lending Product, IPO Product, or similar investment as falsely represented by Regensberg.   Instead, Regensberg used investor funds to engage in highly speculative securities trading, used later-investors' funds to pay money owed to earlier investors, and misappropriated investor funds to pay for Regensberg's personal and family expenses.  Complaint, ¶ 16.

The fraudulent enterprise was uncovered in the fall of 2007.   Shortly thereafter, Regensberg was indicted by the United States Attorney for the Southern District of New York on multiple counts of wire fraud and securities fraud.   Regensberg was ultimately convicted of seven of the eight counts of wire and securities fraud in connection with the theft of more than $10 million through willful misrepresentations regarding the two investment scams he perpetrated through the Debtor.  By decision dated June 29, 2009, Regensberg was sentenced to serve 100 months in prison by the Hon. Victor Marrero of the United States District Court for the Southern District of New York ("District Court").   Judge Marrero found Regensberg's conduct to be particularly "sinister and reprehensible," in part because this fraudster preyed, like a "wolf in sheep's clothing," on close friends and family.  *United States v. Regensberg*, 635 F. Supp. 2d 306, 309-10 (S.D.N.Y. 2009), *aff'd*, 381 Fed. Appx. 60 (2d Cir. 2010).

## II.    PENSON'S ALLEGED ROLE.

It is uncontested by the parties that Regensberg, on behalf of Arbco, and Penson entered into a Customer, Account, Margin, and Short Account Agreement on January 24, 2005 (the

**FOR PUBLICATION**

"Customer Agreement"), pursuant to which Penson was to act as Arbco's clearing broker - to settle and clear trades - and perform other "back office" functions for Arbco.

By the Complaint, the Trustee alleges that Penson acted as an introductory *and* clearing broker for Arbco.  In addition to its duties under the Customer Agreement, Penson provided some level of investment advice, shared trading strategies and computer technology, and effectively financed various trading activities of Arbco.  Complaint, ¶ 50.  The Trustee also alleges, upon information and belief, that Penson and Arbco entered into an additional contract by which Penson would provide a series of accommodations and financing solutions to Arbco in exchange for a share of up to seventy-five (75%) percent of Arbco's trading revenue.  Complaint, ¶ 39.  Pursuant to such contract, Arbco was allegedly allowed to make trades through Penson without having to put any money down or maintain a positive margin account balance, and neither Regensberg nor Arbco was required to provide Penson with typically required financial information regarding assets and liabilities to open trading accounts.  Complaint, ¶¶ 40, 43.  In addition, the Trustee alleges that Penson and its principals took an active role in referring business opportunities and potential new investors to Regensberg/Arbco.  Complaint, ¶¶ 64-71.  The Trustee further alleges that Penson ignored red flags that should have made it aware that Regensberg and Arbco were investing monies of third parties.  Complaint, ¶ 54.  The Trustee alleges that these actions and inactions of Penson allowed Regensberg to continue the Ponzi scheme through Arbco.

### III.    PROCEDURAL HISTORY.

This bankruptcy case was commenced by the filing of an involuntary petition against the Debtor on October 19, 2007.  This Court subsequently entered an order for relief under chapter 7

**FOR PUBLICATION**

of the Bankruptcy Code.  Richard O'Connell was appointed as interim chapter 7 trustee and has since qualified as the permanent Trustee.

On October 15, 2009, the Trustee initiated this Adversary Proceeding.  The original complaint [Dkt. No. 1] alleged eight causes of action against Penson.  Penson moved to dismiss the complaint in its entirety [Dkt. Nos. 8-11].  At a hearing held on October 14, 2010, the Court determined that the complaint was deficient and granted the Trustee leave to amend his complaint.  *See* 10/14/10 Hr'g Trans. [Dkt. No. 35].

The Trustee filed an amended complaint on January 18, 2011 [Dkt. No. 34], adding additional factual allegations, including allegations based on information provided by Regensberg.  By the amended complaint, the Trustee withdrew his claim for turnover, but otherwise repled the remaining seven causes of action recited in the original complaint.  Penson again moved to dismiss [Dkt. Nos. 37-40].  During the pendency of Penson's motion, the U.S. Supreme Court decided *Stern v. Marshall*, 564 U.S. ___, 131 S. Ct. 2594 (2011).  Based on *Stern*, Penson moved to withdraw the reference from the District Court, arguing that the Bankruptcy Court lacked the constitutional authority to enter final judgment on any of the Trustee's claims [Dkt. No. 49].  On July 12, 2012, the Hon. J. Paul Oetken of the District Court agreed, concluding that "the Bankruptcy Court lacks final authority to adjudicate these claims and . . . final judgment must be entered by an Article III court."  *Penson Fin. Servs., Inc. v. O'Connell (In re Arbco Capital Mgmt.)*, 479 B.R. 254, 267 (S.D.N.Y. 2012).  Judge Oetken, however, declined to withdraw the reference, finding that, in the interest of efficiency, the parties should litigate all pretrial matters before the Bankruptcy Court. *Id*. at 267-8.

FOR PUBLICATION

At a July 31, 2012 conference before this Court, the parties agreed that in light of Judge Oetken's decision, this Court should adjudicate Penson's renewed motion to dismiss. *See* 7/31/12 Hr'g Trans. [Dkt. No. 61]. At the same conference, this Court also advised the Trustee to further amend his complaint to take into account new case law that directly impacted his theories of recovery. *Id.*

On September 5, 2012, the Trustee filed the second amended Complaint [Dkt. No. 60], asserting the following causes of action against Penson: Count 1, ¶¶ 72–80, 11 U.S.C. §§ 548(a)(1)(A) and 550 (Actual Fraud); Count 2, ¶¶ 81–90, 11 U.S.C. §§ 548(a)(1)(B) and 550 (Constructive Fraud); Count 3, ¶¶ 91–101, 11 U.S.C. §§ 547 and 550 (Insider Preferences); Count 4, ¶¶ 102–114 (Aiding and Abetting a Common Law Fraud); Count 5, ¶¶ 115–120 (Breach of Fiduciary Duty); Count 6, ¶¶ 121–125 (Breach of Contract); and Count 7, ¶¶ 126–130 (Negligence).

Penson filed its Motion to Dismiss on September 27, 2012 [Dkt. No. 62-65] for failure to state a claim under Rule 12(b)(6). By its Motion to Dismiss, Penson argues that: (i) the Common Law Claims (Counts 4-7) must be dismissed because the Trustee lacks standing to bring such causes of action under the *Wagoner* Rule; (ii) Counts 2 and 3 are barred by the "safe harbor" rule of section 546(e) of the Bankruptcy Code; (iii) Counts 1 and 4 do not meet the heightened pleading requirements of Rule 9(b); and (iv) the Common Law Claims are not properly pled and fail as a matter of law.

The Trustee filed his opposition to the Motion to Dismiss on October 26, 2012 [Dkt. No. 68]. Penson filed its reply in further support of its Motion to Dismiss on November 9, 2012

**FOR PUBLICATION**

[Dkt. Nos. 70-71].   Oral argument on the Motion to Dismiss was held before the Court on December 6, 2012 (the "Hearing").

On January 11, 2013, Penson and certain of its affiliates filed a petition for protection under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware ("Delaware Bankruptcy Court"), Case No. 13-10061 (PJW).   Accordingly, these proceedings were stayed.   On July 31, 2013, this Court received notice from counsel for the Trustee that the Trustee had been granted stay relief by the Delaware Bankruptcy Court to continue to pursue its claims against Penson in this Adversary Proceeding  [Dkt. No. 74].

On September 3, 2013, the Court requested additional briefing from the parties on the Motion to Dismiss in light of the District Court's decision in *SIPC v. Bernard L. Madoff Inv. Securities LLC (In re Madoff Securities)*, 2013 U.S. Dist. LEXIS 56042 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad*").   On September 17, 2013, the parties filed the requested additional briefs (referred to herein as the "Trustee Supplemental Brief" [Dkt. Nos. 75] and the "Penson Supplemental Brief" [Dkt. No. 76]).

Upon review of all of the pleadings and in consideration of arguments made at the Hearing, and as discussed in more detail below, the Court rules as follows: (i) grants the Motion to Dismiss with respect to the Common Law Claims (Counts 4-7) and (ii) denies the Motion to Dismiss with respect to Counts 1-3.   As the Trustee lacks standing to assert the Common Law Claims, the Court will not review the merits or and pleading of these claims.

## STANDARD OF REVIEW

Rule 12(b)(6) allows a party to move to dismiss a cause of action for "failure to state a claim upon which relief can be granted." Rule 12(b)(6); Bankruptcy Rule 7012(b). When

considering a motion to dismiss under Rule 12(b)(6), a court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *EEOC v. Staten Island Sav. Bank*, 207 F.3d 144, 148 (2d Cir. 2000).

To survive a motion to dismiss, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a)(2); Bankruptcy Rule 7008. However, a recitation of the elements of the cause of action, supported by mere conclusory statements, is insufficient. *Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). Rather, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. at 679. A claim is facially plausible where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. In determining plausibility, this Court must "draw on its judicial experience and common sense," *id*. at 679, to decide whether the factual allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

## **DISCUSSION**

### **I.     THE TRUSTEE HAS SUFFICIENTLY PLED ACTUAL FRAUD.**

By Count 1, the Trustee has alleged claims against Penson to avoid and recover actual fraudulent transfers pursuant to sections 548(a)(1)(A) and 550(a) of the Bankruptcy Code. Actual fraudulent transfer claims brought under section 548(a)(1)(A) of the Bankruptcy Code must meet the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. *Am. Tissue, Inc. v. Donaldson, Lufkin & Jenrette Sec. Corp*., 351 F. Supp. 2d 79,

FOR PUBLICATION

106-07 (S.D.N.Y. 2004).  Namely, a trustee must: (i) "state with particularity the circumstances constituting fraud or mistake," but may plead (ii) the "[m]alice, intent, knowledge, and other conditions of a person's mind" generally.  *Picard v. Cohmad Sec. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 454 B.R. 317, 329 (Bankr. S.D.N.Y. 2011) (citing Rule 9(b); Bankruptcy Rule 7009).  This Court finds that the Trustee has adequately alleged these claims.

### A. The Trustee Has Identified the Penson Payments with Particularity as Required Under Rule 9(b).

Under the Bankruptcy Code, to state an actual fraudulent transfer claim with Rule 9(b) particularity, a party must ordinarily allege: (i) the property that was conveyed; (ii) the timing and, if applicable, frequency of the transfer; and (iii) the consideration (if any) paid for the transfer.  *See United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.*, 216 F. Supp. 2d 198, 221 (S.D.N.Y. 2002).  However, where the actual fraudulent transfer claim is asserted by a bankruptcy trustee, applicable Second Circuit precedent instructs courts to adopt "a more liberal view . . . since a trustee is an outsider to the transaction who must plead fraud from second-hand knowledge."  *Nisselson v. Softbank AM Corp. (In re MarketXT Holdings Corp.)*, 361 B.R. 369, 395 (Bankr. S.D.N.Y. 2007) (quoting *Picard v. Taylor (In re Park South Sec., LLC)*, 326 B.R. 505, 517-18 (Bankr. S.D.N.Y. 2005)) (internal quotations omitted).  Moreover, in a case such as this one, where "the [T]rustee's lack of personal knowledge is compounded with complicated issues… the trustee's handicap increases," and "even greater latitude" should be afforded.  *SIPC v. Stratton Oakmont, Inc.*, 234 B.R. 293, 310 (Bankr. S.D.N.Y. 1999).

Here, the Trustee has identified and listed each of the Penson Payments made from Arbco to Penson on Exhibit A to the Complaint.  Specifically, Exhibit A lists the date and amount of

**FOR PUBLICATION**

each transfer, as well as the type of transfer made (i.e., wire transfers).  Accordingly, the Trustee

has identified the Penson Payments with the requisite particularity.

### B. The Trustee Has Adequately Alleged Intent Under Rule 9(b).

In addition to specifically identifying the transfers to be avoided, a party must also

sufficiently plead the element of fraudulent intent required by Rule 9(b).  *See* Rule 9(b);

Bankruptcy Rule 7009 ("[M]alice, intent, knowledge, and other conditions of a person's mind

may be alleged generally.").  Pursuant to section 548(a)(1)(A) of the Bankruptcy Code, a trustee

must establish that the debtor "made such transfer . . . with actual intent to hinder, delay, or

defraud." 11 U.S.C. 548(a)(1)(A); *see also Cohmad*, 454 B.R. at 330.

By its Motion to Dismiss, Penson argues that the Trustee is required to plead Penson's

fraudulent intent in order to state a claim under section 548(a)(1)(A) of the Bankruptcy Code

with the particularity required by Rule 9(b).  Motion to Dismiss, 23-24.  Penson is incorrect.

While there has been conflicting case law in this Circuit as to whether a transferee's intent must

be pled under New York Debtor Creditor Law, it is the intent of the transferor alone, and not the

intent of the transferee, that is relevant under section 548(a)(1)(A) of the Bankruptcy Code.  11

U.S.C. 548(a)(1)(A); *see also, Christian Bros. High Sch. Endowment v. Bayou No Leverage

Fund, LLC (In re Bayou Group, LLC)*, 439 B.R. 284, 304 (S.D.N.Y. 2010) ("Actual fraudulent

conveyance claims under [S]ection 548(a)(1)(A) turn on the intent of the debtor in making the

transfer; the state of mind of the transferee is irrelevant."); *Marketxt Holdings Corp.*, 361 B.R. at

395 ("Under the Bankruptcy Code, the plaintiff must establish the actual fraudulent intent of the

transferor/debtor. . . ."); *Silverman v. Actrade Capital, Inc. (In re Actrade Fin. Techs., Ltd.)*, 337

B.R. 791, 808 (Bankr. S.D.N.Y. 2005) ("Cases under § 548(a)(1)(A) indicate that it is the intent

of the transferor/[debtor] and not the transferee that is relevant for purposes of pleading a claim for intentional fraudulent conveyance under the Bankruptcy Code.") (internal cites omitted).

Here, the relevant fraudulent intent – that of Arbco as the transferor - in transferring the Penson Payments is established as a matter of law by virtue of the "Ponzi scheme presumption." *See Gowan v. The Patriot Grp., LLC (In re Dreier LLP)*, 452 B.R. 391, 424 (Bankr. S.D.N.Y. June 16, 2011) ("Debtor's actual intent to defraud creditors [under section 548(a)(1)(A) of the Bankruptcy Code] is presumed by operation of the Ponzi scheme presumption…"); *McHale v. Boulder Capital LLC (In re The 1031 Tax Grp.)*, 439 B.R. 47, 72 (Bankr. S.D.N.Y. 2010) ("If the Ponzi scheme presumption applies, actual intent for purposes of section 548(a)(1)(A) is established as a matter of law.").   Under this presumption, "[a]ctual intent to hinder, delay or defraud may be established as a matter of law in cases in which the [transferor] runs a Ponzi scheme . . . because transfers made in the course of a Ponzi operation could have been made for no purpose other than to hinder, delay or defraud creditors." *Gredd v. Bear Stearns Sec. Corp. (In re Manhattan Inv. Fund Ltd.)*, 359 B.R. 510, 517-18 (Bankr. S.D.N.Y. 2007) ("*Manhattan Investment I*"), *aff'd in part and rev'd in part on other grounds*, 397 B.R. 1, 11 ("*Manhattan Investment II*") (S.D.N.Y. 2007) ("[T]he Ponzi scheme presumption remains the law of this Circuit.").  *See also Rieser v. Hayslip (In re Canyon Sys. Corp.)*, 343 B.R. 615, 637 (Bankr. S.D. Ohio 2006) ("[C]ourts nationwide have recognized that establishing the existence of a Ponzi scheme is sufficient to prove a Debtor's actual intent to defraud.") (internal cites omitted). Penson does not dispute the existence of the Ponzi scheme conducted by Regensberg through Arbco.  Motion to Dismiss, 1.

While, as Penson points out, it is conceivable that "certain transfers may be so unrelated to a Ponzi scheme that the presumption should not apply," the Trustee has sufficiently pled that

**FOR PUBLICATION**

the funds used to effectuate the Penson Payments were products of the Ponzi scheme. Complaint, ¶ 74. In addition, much like the transfers made to Bear Stearns in *Manhattan Investment*, it is alleged by the Trustee that at least some of the Penson Payments were made to Penson in payment of various trades and commissions, Complaint, ¶ 35, which enabled Regensberg to continue to trade and continue to defraud Arbco's creditors. As the transfer of the Penson Payments "serve[d] to further [the] Ponzi scheme," the Ponzi scheme presumption is applicable and the transfers are therefore presumed fraudulent. *Manhattan Investment II* at 11. Accordingly, the Trustee has sufficiently pled actual fraud under section 548(a)(1)(A) of the Bankruptcy Code. The Motion to Dismiss is denied as to Count 1.

## II.    THE SAFE HARBOR RULE DOES NOT, AS A MATTER OF LAW, PRECLUDE THE ASSERTION OF THE TRUSTEE'S CLAIMS FOR CONSTRUCTIVE FRAUDULENT TRANSFER AND PREFERENCE.

By its Motion to Dismiss, Penson argues that the Penson Payments are protected from avoidance by the "safe harbor" provision found in section 546(e) of the Bankruptcy Code (the "Safe Harbor Rule")[1] and, therefore, the Trustee's Causes of Action for Constructive Fraud and Insider Preferences (Counts 2 and 3, respectively) must be dismissed as a matter of law. As Penson points out, numerous courts have decisively rejected the Trustee's argument that there is a Ponzi scheme exception to the application of the Safe Harbor Rule. Penson cites to the District

---

[1] The Safe Harbor Rule provides, in relevant part, as follows:

> Notwithstanding sections 544, 545, 547, 548(a)(1)(B), and 548(b) . . . the trustee may not avoid a transfer that is a margin payment . . . or settlement payment . . . made by or to (or for the benefit of) a . . . stockbroker . . . or securities clearing agency, or that is a transfer made by or to (or for the benefit of) a . . . stockbroker . . . or securities clearing agency, in connection with a securities contract, as defined in section 741(7) . . . that is made before the commencement of the case, except under section 548(a)(1)(A) of this title.

11 U.S.C. § 546(e).

**FOR PUBLICATION**

Court's decision in *Picard v. Katz* in which Judge Rakoff specifically rejected the Madoff trustee's argument that the Safe Harbor Rule does not apply to protect transfers made in furtherance of a Ponzi scheme. *Picard v. Katz*, 462 B.R. 447, 450-53 (S.D.N.Y. 2011). The idea of a "Ponzi scheme exception" to the Safe Harbor Rule was further rejected by Judge Rakoff in denying the trustee's application to certify the holding for an interlocutory appeal. *Picard v. Katz*, 466 B.R. 208, 212 (S.D.N.Y. 2012) ("*Katz II*") (rejecting the trustee's arguments that the defendants were "not entitled to the 'safe harbor' protections of § 546(e)" because Madoff was "conducting a 'Ponzi scheme.'"). *See also Picard v. Greiff*, 476 B.R. 715 (S.D.N.Y. 2012) (following *Katz* and holding that the Safe Harbor Rule bars the Madoff trustee from pursuing claims made against investors under Bankruptcy Code sections 548(a)(1)(B) and 544.).

Courts outside of this Circuit have similarly rejected the notion that section 546(e) contains a general Ponzi scheme exception. *See Hoskins v. Citigroup, Inc. (In re Viola)*, 469 B.R. 1 (9th Cir. B.A.P. 2012) (affirming bankruptcy court's decision that section 546(e) precluded a trustee's avoidance claims under Bankruptcy Code section 544(b) and applicable state law, even though such transfers were made in furtherance of a Ponzi scheme); *Peterson v. Enhanced Investing Corp. (Cayman) Ltd.* (*In re Lancelot Investors Fund*), 467 B.R. 643 (Bankr. N.D. Ill. 2012) (rejecting a trustee's argument that certain transfers were not eligible for safe harbor protection because they were part of a Ponzi scheme and therefore tainted by fraud). These courts have found that section 546(e) specifically addresses the concern with shielding transfers that are made in furtherance of fraudulent schemes by expressly allowing a trustee to avoid actual fraudulent transfers. As the District Court explained in *Greiff*:

> [Section 546(e)] by its plain terms, already contains an exception
> for certain kinds of fraud. Specifically, [Section] 546(e) permits
> the Trustee to avoid actually fraudulent transfers under [Section]

**FOR PUBLICATION**

> 548(a)(1)(A). The Trustee offers no explanation for why Congress,
> if it had in fact wanted to enact the general fraud exception the
> Trustee advocates, did not express that intention in the statute,
> when it did express its desire to exempt [Section] 548(a)(1)(A).

*Greiff*, 476 B.R. at 722; *see also Katz II*, 2012 WL 127397, at *5 (rejecting an "implied" fraud

exception to Section 546(e) because the statute contains an "explicit fraud exception—namely,

its exemption of § 548(a)(1)(A) from the safe harbor").  Similarly, in *Lancelot*, the chapter 7

trustee argued that "the [safe harbor established by Section 546(e)] do[es] not shield payments

and transfers tainted by fraud . . . ."  467 B.R. at 651.  The court rejected this argument and

concluded that, although Congress intended to protect only "legitimate transactions, not massive

Ponzi schemes[,]" Congress had achieved that purpose by refusing to extend safe harbor

protection to transfers representing actual fraud. *Id*. at 654.  The Bankruptcy Appellate Panel for

the Ninth Circuit, in *Hoskins*, noted the appeal of "[the trustee's] argument that 'Section 546(e)

should not be used as a free pass to avoid liability in a scheme to defraud[,]'" but held that,

where an exception for actual fraud already existed, it could not elect to expand the "clear

statutory limits" of section 546(e). 469 B.R. at 10.

 The recent decision in *Cohmad* is of particular relevance to the instant Motion to

Dismiss.  Clarifying his earlier decisions in *Katz* and *Greiff*, Judge Rakoff emphasized that where

a complaint sufficiently alleges that the transferee had actual knowledge of the underlying fraud,

the transferee cannot prevail on a motion to dismiss on section 546(e) grounds.  *Cohmad*, 2013

U.S. Dist. LEXIS 56042 at *22-23.  Transferees who participated in a fraud, and those with

actual knowledge of a fraud -- who "therefore actively participated in [the fraud] by taking

advantage of its workings" -- stand in a different posture from innocent transferees and are not

entitled to invoke the protections of the Safe Harbor Rule. *Id*. at *30-32.  Significantly, in

discussing what is sufficient to demonstrate "actual knowledge," Judge Rakoff stated that the

**FOR PUBLICATION**

Trustee must allege more than that the transferee did not take in "good faith" and must show, at a minimum, that the transferee had actual knowledge of the fraud, *id.* at 32, and that in some circumstances, "willful blindness" might be sufficient to constitute actual knowledge. *Id.* at *33, n.2.

In the Trustee Supplemental Brief, the Trustee argues that the *Cohmad* decision crystalized three important points relevant to the instant motion: (i) the existence of a Ponzi scheme exception to the Safe Harbor Rule is still open to debate; (ii) in some contexts "willful blindness is sufficient to substitute for actual knowledge" (citing *Cohmad* at * 33, n.2); and (iii) the District Court has held that in certain contexts "conscious avoidance" (the equivalent of "willful blindness") is sufficient to satisfy the actual knowledge requirement (citing *Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC*, 479 F. Supp. 2d 349 (S.D.N.Y. 2007)).   Trustee Supplemental Brief, 3-6.  The Trustee asserts that, by the Complaint, he has pled both Penson's actual knowledge of the fraud, as well as its conscience avoidance of "confirming facts that, if known, would demonstrate the fraudulent nature of the endeavor," *Fraternity Fund* at 368, and that therefore, Penson should be deemed to have actual knowledge of the fraud for purposes of a *Cohmad*/Safe Harbor Rule analysis. Trustee Supplemental Brief, 7.  In the Penson Supplemental Brief, Penson asserts that because the Trustee did not sufficiently allege Penson's actual knowledge of or participation in the fraud, *Cohmad* does not apply, and that the allegation that Penson turned a blind eye to the fraud and ignored red flags "does not satisfy the demanding requirement of actual knowledge."  Penson Supplemental Brief, 8.  The Court disagrees.

While there are not extensive allegations in the Complaint that Penson participated in or had actual knowledge of the fraud, there are sufficient allegations of "willful blindness" or "conscious avoidance" on the part of Penson, given the particular relationship between Arbco

**FOR PUBLICATION**

and Penson, to survive a motion to dismiss.  Applying Judge Kaplan's "conscious avoidance" analysis in *Fraternity Fund* here compels the conclusion that Penson should not be permitted to hide behind its own knowing and purposeful lack of action.  As alleged by the Trustee, Penson was obligated and required by its fiduciary duties to Penson, under various contracts, as well as by securities law, to ensure that Arbco was properly funded while conduct legitimate trading activity.  The Trustee's allegations against Penson assert that, at a minimum, Penson ignored various securities regulations in allowing Penson to trade while underfunded, without having to put any money down or maintain a positive margin account balance.  The Trustee further alleges that Penson ignored red flags that should have made it aware that Regensberg and Arbco were investing monies of third parties.  Other aspects of the alleged relationship between Arbco and Penson provide enough detail to get the Trustee to trial on Counts 2 and 3.  The allegations of "willful blindness," in the alleged circumstances, are sufficient to survive the Motion to Dismiss and may be sufficient, if proven, to constitute actual knowledge.  Accordingly, the Motion to Dismiss is denied as to Counts 2 and 3.

### III.    THE TRUSTEE DOES NOT HAVE STANDING TO PURSUE THE COMMON LAW CLAIMS.

#### A.  The *Wagoner* Rule Acts as a Bar to Federal Standing.

By its Motion to Dismiss, Penson argues that the Trustee lacks standing under the *Wagoner* Rule to assert the Common Law Claims.  The Court agrees.  The Second Circuit doctrine commonly referred to as the "*Wagoner* Rule" provides that a bankruptcy trustee lacks federal standing to seek recovery on behalf of a debtor company against third-parties for injuries incurred by the misconduct of the debtor's agents.  *Shearson Lehman Hutton, Inc. v. Wagoner*,

FOR PUBLICATION

944 F.2d 114, 118 (2d Cir. 1991).  *See also Kirschner v. KPMG LLP*, 626 F.3d 673, 674 (2d Cir.

N.Y. 2010) ("*Kirschner* IV"); *Picard v. HSBC Bank PLC*, 454 B.R. 25, 29 (S.D.N.Y. 2011).

Regensberg was the sole executive and manager of Arbco (and its alter-ego, Midwest),

and, as pled by the Trustee and found by the District Court in the criminal case, the sole

mastermind behind the Ponzi scheme.  Complaint, ¶¶ 11-17, 20; *US v. Regensberg*, 635 F. Supp.

2d at 309 ("During the course of over three years… Regensberg committed dozens if not

hundreds of acts of dishonesty and fraud. He alone devised the illegal scheme and ensnared

twenty-three known victims.").  As such, Regensberg's misconduct must be imputed to Arbco.

*See Kirschner v. KPMG LLP*, 15 N.Y.3d 446, 465 (N.Y. 2010) ("*Kirschner III*") ("Agency law

presumes imputation even where the agent acts less than admirably, exhibits poor business

judgment, or commits fraud.").

The Trustee, standing in the shoes of the Debtor, seeks recovery for injuries incurred by

the misconduct of Regensberg. "Because management's misconduct is imputed to the

corporation, and because a trustee stands in the shoes of the corporation, the *Wagoner* rule bars a

trustee from suing to recover for a wrong that he himself essentially took part in." *Wight v.

BankAmerica Corp.*, 219 F.3d 79, 87 (2d Cir. 2000) (citing *In re Mediators*, 105 F.3d 822, 826

(2d Cir. 1997)); *see also Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1094 (2d Cir. 1995);

*Wagoner*, 944 F.2d at 120.

The Trustee argues in his opposition to the Motion to Dismiss that under New York law,

the doctrine of *in pari delicto* is an affirmative defense, which must be pled by Penson, and is not

a bar to standing of the Trustee.  However, as the District Court explained in *Picard v. HSBC*,

"[w]hen it comes to common law claims, a bankruptcy trustee is often barred from bringing

claims on behalf of the debtor's estate because of the common law doctrine of *in pari delicto*, which generally precludes a wrongdoer like Madoff Securities from recovering from another wrongdoer. Although, under New York State law, *in pari delicto* is an affirmative defense, *see Kirschner* [*III*], in federal court prudential considerations deprive a bankruptcy trustee of standing to even bring a claim that would be barred by *in pari delicto*." *Picard v. HSBC*, 454 B.R. at 29 (citing *Wagoner* at 118). This Court must follow the holdings of the Second Circuit and District Court; accordingly, the Court finds that the *Wagoner* Rule acts as bar to federal standing. Thus, the Trustee does not have standing to pursue the Common Law Claims against Penson.

### B.  The Trustee Has Not Sufficiently Pled Any Exceptions To *Wagoner*.

The Trustee asserts that even if the *Wagoner* Rule applies to bar his standing to bring the Common Law Claims, there are two exceptions to imputation that apply in this case: (i) the adverse interest exception and (ii) the innocent insider exception.[2]

### (i) Adverse Interest Exception.

The adverse interest exception to *Wagoner* is applied only when the corporate officer has "totally abandoned" the corporation's interests. *Breeden v. Kirkpatrick & Lockhart LLP (In re*

---

[2] The only other exception to imputation exists when the defendant is shown to be an insider or fiduciary of the debtor. *See Picard v. Madoff (In re Bernard L. Madoff Inv. Sec. LLC)*, 458 B.R. 87, 123-124 (Bankr. S.D.N.Y. 2011) ("…it is well established that the *Wagoner* and *in pari delicto* rules do 'not apply to actions of fiduciaries who are insiders in the sense that they either are on the board or in management, *or in some other way control the corporation*.'") (citing *In re Optimal U.S. Litg.*, 813 F. Supp. 2d 383, 400 (S.D.N.Y. 2011) (emphasis in original) and additional cases).

Without specifically asserting this exception, the Trustee has pled that Penson was a fiduciary of Arbco in the context of a breach of fiduciary duty allegedly owed to Arbco under certain agreements entered into between the entities and Penson's actions of going beyond the functions of a clearing broker. However, the Trustee has not pled that Penson is on the board of Arbco, is a manager of Arbco, or was otherwise in control of Arbco in the context of an imputation exception; thus the fiduciary insider exception does not apply.

*Bennett Funding Group, Inc.)*, 336 F.3d 94, 100 (2d Cir. 2003) (quoting *Mediators, Inc. v. Manney (In re Mediators, Inc.)*, 105 F.3d 822, 827 (2d Cir. 1997)).  Such abandonment "rebuts [*Wagoner*'s] usual presumption," *Mediators* at 827, because where an officer acts entirely in his own interests and adversely to the interests of the corporation, that misconduct cannot be imputed to the corporation.  *Kirschner v. Grant Thornton LLP*, 2009 U.S. Dist. LEXIS 32581 *20 (S.D.N.Y. Apr. 14, 2009).  "New York courts have cautioned that [the adverse interest] exception is a narrow one..." *Bankruptcy Servs. v. Ernst & Young (In re CBI Holding Co.)*, 529 F.3d 432, 448 (2d Cir. 2008).

In 2009, in light of conflicting case law between New York state and federal courts, the Second Circuit certified a series of questions to the New York Court of Appeals relating to the application of the adverse interest exception to imputation under *Wagoner/in pari delicto*. *Kirschner v. Grant Thornton LLP*, 2009 U.S. Dist. LEXIS 32581 (S.D.N.Y. Apr. 14, 2009) ("*Kirschner I*"), *questions certified sub nom. Kirschner v. KPMG LLP*, 590 F.3d 186 (2d Cir. 2009) ("*Kirschner II*"), *answering certified questions*, 15 N.Y.3d 446 (2010) ("*Kirschner III*"), *aff'd*, 626 F.3d 673 (2d Cir. 2010) ("*Kirschner IV*").  The New York Court of Appeals advised that in order to satisfy the exception, one must show that there was actual harm to the corporation by the agent's actions; the showing that the agent acted to benefit himself is not enough. *Kirschner III* at 467-468, *aff'd* in *Kirschner IV* at 676-677.  The Court of Appeals further stated that the exception would not apply even if the corporation received short term benefits as a result of the fraud but suffered long term harm because of it.  *Kirschner III* at 468-69.  In addition, the Court of Appeals specifically rejected the notion that the adverse interest exception could be satisfied where insiders intended to benefit themselves by their misconduct but also unintentionally benefitted the corporation. *Id*. at 467-68.

**FOR PUBLICATION**

By the Complaint, the Trustee pled that "Arbco received no benefit from Regensberg's ultra vires fraudulent activities and was, in fact, harmed by Regensberg's abandonment of Arbco's corporate interests for his own personal aggrandizement," Complaint, ¶ 3, and that "Regensberg demonstrated a complete disregard and abdication of the corporate interests of Arbco and utilized the company and investor funds… for his own benefit." Complaint, ¶ 25. The harm to Arbco alleged by the Trustee includes substantially increased debt without any benefit, and being stripped of its assets by virtue of the Ponzi scheme. Complaint, ¶¶ 26, 33.

However, the Complaint makes clear that Regensberg, through the Ponzi scheme, falsely promised investors high rates of returns and "used later-investor's funds to pay money owed to earlier investors," thereby perpetuating the life of Arbco for close to three years. Complaint, ¶¶ 11-17. Because Arbco also benefitted from the Ponzi scheme, the adverse interest exception does not apply. "So long as the corporate wrongdoer's fraudulent conduct enables the business to survive--to attract investors and customers and raise funds for corporate purposes--this test [for the adverse interest exception] is not met. *Kirschner III* at 468. *See also Cobalt Multifamily Investors I, LLC v. Shapiro*, 857 F. Supp. 2d 419, 427 (S.D.N.Y. 2012) ("The [adverse interest] exception applies only where the corporation did not benefit at all from the fraud."). Courts have repeatedly found allegations similar to those in the Complaint insufficient to trigger the application of the adverse interest exception. *See, e.g., Goldin v. Primavera Familienstiftung (In re Granite Partners)*, 194 B.R. 318, 331 n.15 (Bankr. S.D.N.Y. 1996) (rejecting the trustee's attempted application of the adverse interest exception because the complaint did "not allege facts suggesting that [management] sought to defraud or intentionally injure [the company] as opposed to [the] investors…").

**FOR PUBLICATION**

The Trustee also asserts a "Ponzi scheme presumption" in the context of *in pari delicto* – "… in view of his conviction of having engineered a Ponzi scheme, Regensberg is also deemed by operation of law to having acted without regard to the overall corporate interests and well-being of Arbco." Complaint, ¶ 29. However, the Trustee does not offer any support for this proposition in his opposition and the Court has not found any case law to support such an application of the Ponzi scheme presumption. For these reasons, the adverse interest exception does not apply.

### (ii) Innocent Insider Exception.

Courts have recognized an exception to the adverse interest exception where the principal and agent are one and the same - the sole actor rule. As described by the Trustee in his opposition to the Motion to Dismiss, "when there is only one person in charge of a fraud riddled company, the adverse interest exception cannot apply as a matter of law, because the company is imputed with all of the knowledge and intent of that sole bad actor." Trustee's opposition [Dkt. No. 68], 18-19. The Second Circuit explained "where the principal and agent are one and the same, the adverse interest exception is itself subject to an exception styled the 'sole actor' rule." *Mediators*, 105 F.3d at 827; *CBI Holding Co.*, 529 F.3d at 453 n.9. The sole actor rule "imputes the agent's knowledge to the principal notwithstanding the agent's self-dealing because the party that should have been informed was the agent itself albeit in its capacity as principal." *Mediators*, 105 F.3d at 827.

As Regensberg was the sole executive and manager of Arbco, the sole actor rule would apply to negate any available adverse interest exception (which the Court finds does not apply). However, there is an "innocent insider exception" which is a corollary to the sole actor rule. If

other managers or owners--besides the bad actor--control the company, it necessarily follows that the company and the agent are not the same entity; because the principal and the agent are not the same, the sole actor rule cannot not apply. *See Mediators, 105 F.3d at 827; Ernst & Young v. Bankruptcy Servs. (In re CBI Holding Co.)*, 311 B.R. 350, 372-73 (S.D.N.Y. 2004). The touchstone of the innocent insider exception is control – whether the innocent person or persons inside the corporation had the power to stop the fraud. *See 1031 Tax Group*, 420 B.R. at 202; *Cobalt Multifamily Investors I, LLC v. Shapiro*, 2009 U.S. Dist. LEXIS 60481, *30-31 (S.D.N.Y. July 15, 2009) ("The presence of an innocent person or entity that could have stopped the fraud... defeats the sole actor exception.").

By the Complaint, the Trustee pled that David Monheit ("Monheit"), Arbco's computer programmer, "effectively serv[ed] as a partner to Regensberg" and was the only other person with the authority to "give orders" on behalf of Arbco. Complaint, ¶ 18, 47. The Trustee asserts the Monheit's role and authority within Arbco make him a potential "innocent insider" to circumvent the "sole actor" rule that would otherwise be applicable given that Regensberg is the sole executive and manager of Arbco.

However, New York law does not recognize "innocent insider" as an independent exception that stands alone from the adverse interest exception. *See 1031 Tax Group*, 420 B.R. at 203 ("Thus, unless the adverse interest exception to the presumption of imputation applies, it is immaterial whether innocent insiders exists; the agent is still acting on behalf of the company, and his actions will be imputed to the company notwithstanding the existence of those innocent insiders.") (quoting *CBI Holding*, 311 B.R. at 373). As the Court has found that the adverse interest exception does not apply, the Court declines to analyze the Trustee's pleading of the innocent insider exception.

**FOR PUBLICATION**

As there are no applicable exceptions to imputation, the Trustee lacks standing under *Wagoner* to bring the Common Law Claims.  Accordingly, the Motion to Dismiss is granted as to Counts 4-7, and such claims are dismissed with prejudice.

## **CONCLUSION**

Based on the foregoing, the Court finds that the Trustee (i) has sufficiently pled his claim for actual fraud under the Bankruptcy Code, (ii) is not barred from asserting claims for constructive fraud and preference by the Safe Harbor Rule, and (iii) does not have standing to pursue the Common Law Claims.

Accordingly, Penson's Motion to Dismiss is granted in part and denied in part as follows: (a) denied as to the First Cause of Action – Actual Fraud; (b) denied as to the Second Cause of Action – Constructive Fraud; (c) denied as to the Third Cause of Action – Insider Preferences; and (d) granted as to the Common Law Claims: (i) Fourth Cause of Action - Aiding and Abetting a Common Law Fraud, (ii) Fifth Cause of Action - Breach of Fiduciary Duty, (iii) Sixth Cause of Action - Breach of Contract, and (iv) Seventh Cause of Action - Negligence.  The Common Law Claims are dismissed with prejudice.

IT IS SO ORDERED.

Dated: New York, New York
         September 23, 2013

                              /s/ Shelley C. Chapman_____
                              UNITED STATES BANKRUPTCY JUDGE